IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| KEVIN R. MAYBERRY, | : |
| | : |
| Petitioner, | : |
| | : CIVIL ACTION |
| vs. | : File No. **7:02-CV-107 (HL)** |
| | : |
| WILLIAM TERRY, Warden, | : |
| | : |
| Respondent. | : |
| _____ | |

**RECOMMENDATION**

The petitioner filed this § 2254 action challenging his 1998 Lowndes County conviction for voluntary manslaughter arising from a September 1998 jury trial for which petitioner received a twenty-year sentence to serve. Petitioner's convictions and sentences were affirmed on direct appeal on March 24, 1999.  Mayberry v. State, 237 Ga. App. 226 (1999).

Petitioner filed a petition for writ of habeas corpus in Tattnall County.  An evidentiary hearing was held, during which petitioner's former attorney testified, and the state court denied habeas relief on September 25, 2001. The Supreme Court of Georgia denied petitioner's application for certificate of probable cause to appeal on September 18, 2002.  The instant petition was filed on September 26, 2002.

In the present petition, petitioner raises several grounds.  In Ground One, petitioner contends that trial counsel failed to request a charge on involuntary manslaughter and/or failed to reserve objections to the trial court's decision not to give such an instruction.  In Ground Two, petitioner contends that trial counsel should have requested funds for a defense expert to perform forensic testing as to the cause of death and on the boots of one of the witnesses.  In Ground Three,

petitioner contends that trial counsel was ineffective for failing to investigate and present evidence regarding the witness's violent past and criminal record.  In Ground Four, petitioner asserts that he received ineffective assistance of counsel on appeal in that counsel failed to raise a claim that the trial court erred in failing to sua sponte charge the jury on involuntary manslaughter.  In Ground Five,  petitioner asserts that the prosecution failed to disclose a deal it had made with a witness and failed to correct his incorrect testimony at trial.  In Ground Six, petitioner contends that trial counsel should have investigated an alleged deal made by the witness and the state.  Ground Seven addresses petitioner's contention that the prosecution failed to disclose evidence of the witness's violent past and mental illness.

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) established standards for habeas review of state court decisions.    Amended § 2254(d) states in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Eleventh Circuit has interpreted the provisions as  providing that a court evaluating a habeas petition under § 2254(d)(1) must engage in a three-step process: First, the court must "survey the legal landscape" to ascertain the federal law applicable to the petitioner's claim that is "clearly established" by the Supreme Court at the time of the state court's adjudication. Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court case law, either because the state court failed to apply the proper

Supreme Court precedent, or because the state court reached a different conclusion on substantially similar facts. If the state court's decision is not contrary to law, the reviewing court must then determine whether the state court unreasonably applied the relevant Supreme Court authority.  Neeley v. Nagle, 138 F. 3d 917 (11th Cir. 1998), cert. denied 525 U.S. 1075, 119 S.Ct. 811, (1999).

The United States Supreme Court has concluded that a state decision that is "contrary to" clearly established Supreme Court precedent is one in which the state court either (1) arrives at a conclusion opposite of that reached by the Supreme Court on a question of law, or (2) confronts facts that are "materially indistinguishable" from a relevant Supreme Court precedent and arrives at an opposite result.  Under the AEDPA's "unreasonable application" clause, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.  Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000).

The facts as found by the Georgia Court of Appeals are as follows:

Viewed in the light most favorable to the verdict, the evidence shows that the body of Royce Phillip Croft was found in Room 42 of the Big 7 Motel in Valdosta. A medical examiner, employed by the Georgia Bureau of Investigation, testified that he performed an autopsy on Croft and determined that the combined effect of crushing injuries to his neck, stab wounds to his chest, and blunt force injuries to his head caused Croft's death. According to the medical examiner, any one of these three lethal injury sequences could have caused Croft's death.
At trial, Robert Allen Pilkinton testified that he went to Room 45 of the Big 7 Motel around 2:30 p.m. on September 12, 1997. Later that evening, Pilkinton and Mayberry went to Croft's room. According to Pilkinton, they drank beer in the room until Croft accused Pilkinton of taking some of his money. After hitting Pilkinton with his fist, Croft pulled out a knife and told Pilkinton he was going to kill him. Pilkinton then punched Croft in the mouth, threw him on the ground and started kicking him. Pilkinton testified that when Croft was "just laying there" and "still breathing," he told Mayberry that they needed to get out of there. Mayberry replied, "[T]he man can identify us" and Pilkinton saw Mayberry stab Croft with a knife  while Pilkinton walked out

the door of the room. Pilkinton returned to Room 45 and told his brother what had happened. Approximately two minutes later, Mayberry also returned to Room 45 and asked for a ride. Pilkinton testified that he did not report what had happened to the police because he did not know that Croft was dead.

During Mayberry's trial, Pilkinton admitted that he initially denied participating in the fight with Croft when he was questioned by police. In his first written statement to the police, he claimed that everything was fine when he left Mayberry and Croft in Room 42 and that when Mayberry returned to Room 45 approximately 35 minutes later, he told Pilkinton he had stabbed Croft. In his second written statement made 52 minutes later, Pilkinton claimed Mayberry stabbed Croft with no physical provocation from Croft. Three days later, Pilkinton gave a recorded statement to the police and admitted for the first time that he had punched and kicked Croft after Croft threatened him. He also told the police that Mayberry stabbed and kicked Croft when Croft was on the floor.

Kristina Jurkiewicz testified that on the evening of September 12, 1997, she visited her boyfriend at the Big 7 Motel. During the course of the evening, Mayberry, Pilkinton, and Croft visited in their room and drank beer. She further testified that after she fell asleep sometime after 4:00 a.m., Mayberry and Pilkinton flew into their room and told them "we just killed a man" and need to leave. Mayberry pulled a knife out of his back pocket which was covered with "brown stuff" and told her it was blood. Jurkiewicz thought they were joking and Mayberry and Pilkinton left about two minutes after they entered the room. The next day, after Croft's body was discovered, Pilkinton told her that Croft "had tried to make a sexual advance towards [Pilkinton] by putting his foot in between [Pilkinton's] crotch and rubbing him." Pilkinton then explained that when he started beating up Croft, Croft pulled a knife and things got out of hand from there.

Mayberry testified that after he fell asleep on the couch in Croft's room, he woke up to find Croft and Pilkinton fighting. Because it appeared that Croft was getting the better of Pilkinton, Mayberry got up, hit Croft on the side of the face, and knocked him into the wall. When Croft pulled a knife and told him that he was going to kill him, Mayberry pulled his own knife and they "started going at it." After Mayberry stabbed Croft twice in the chest, Croft let go of the knife and Mayberry backed away from him. Mayberry testified that Pilkinton then slammed Croft to the ground, grabbed the knife from Mayberry's hand, and stabbed Croft repeatedly. Mayberry claimed he then left the room, followed by Pilkinton about ten seconds later.

### 1. *Ineffective Assistance of Counsel*

Petitioner raises several grounds of ineffective assistance of counsel at trial, as stated above. The state habeas court found that petitioner was represented by James F. Council, Jr., who at the time of trial had been licensed to practice law in Georgia for approximately nineteen years and had handled approximately fifty felony trials, including several murder trials. In preparing for petitioner's trial, Council had engaged in reciprocal discovery, read the state's file, and filed a

4

number of motions, including an objection to the granting of immunity to Pilkinton.  Council elicited detailed testimony during the trial about the victim's murder conviction.

In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court adopted a two-part standard for evaluating claims of ineffective assistance of counsel.  In order to establish that his counsel's representation was constitutionally defective, the petitioner must show (1) that counsel's representation was deficient, and (2) that the petitioner was prejudiced by his counsel's alleged deficient performance. The Court reiterated that "[w]hen a convicted defendant complains of  the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." 466 U.S., at 687-688, 104 S.Ct., at 2065.  The Court further held, however, that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694, 104 S.Ct., at 2068.  This additional "prejudice" requirement was based on the Court's conclusion that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  Id., at 691, 104 S.Ct., at 2067.

Petitioner bears the burden of establishing both of these elements by a preponderance of the evidence. Mills v. Singletary, 63 F.3d 999, 1020 (11th Cir.1995), cert. denied 517 U.S. 1214 (1996).  However, the Supreme Court has warned that "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. The court is to avoid "the distorting effects of hindsight" and "evaluate the conduct from counsel's perspective at the time" the challenged decision was made. Id. In addition, the Court begins the performance inquiry with "a strong presumption that counsel's conduct falls within the wide

range of reasonable professional assistance." Id. Finally, if the challenged action was the result of a "reasonable tactical decision," made after adequate investigation, it becomes "virtually unchallengeable," "and the inquiry is generally at an end." Mills, 63 F.3d at 1024.

'It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.' Strickland, 104 S.Ct. at 2065.

In evaluating whether a trial counsel's performance was deficient, the counsel's performance must be evaluated for "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688, 104 S.Ct. at 2065. "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight." Id. at 689, 104 S.Ct. at 2065.

Strickland encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. Courts must not be "interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately." White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992), cert. denied 514 U.S. 1131 (1995).

*a. Ground One*

The state habeas court found that there was no recording of the charge conference at trial, nor

were the requested charges included in the record; however, Council testified that he did file requests to charge on the lesser included offense of both voluntary and involuntary manslaughter. The trial judge declined to charge on involuntary manslaughter, but did charge on voluntary manslaughter. The state habeas court found that there was no evidence that counsel did not reserve objections to the charge, and in the absence of the contrary, presumed this to be a reasonable tactical decision.

*b. Ground Two*

The state habeas court found no error in counsel's failure to request funds to perform forensic testing as to the cause of death or to examine the boots worn by Pilkinton. Counsel testified that he did not see this as a big issue in the trial, because petitioner admitted to taking part in the attack on the victim, and there was no real dispute about who was wearing the boots or what damage was caused. The habeas court found this tactical decision was reasonable, and that petitioner had not shown that an expert would have testified that the stab wounds admittedly inflicted by petitioner were not fatal. Therefore, petitioner cannot show that he was prejudiced by the failure to attempt to procure such an expert.

*c.* Ground Three

The state habeas court found that counsel was aware of the victim's violent past and, while unable to obtain copies of his criminal record prior to trial, did in fact elicit testimony from three separate witnesses regarding the victim's criminal record and violent past. The state habeas court found that while counsel might have been deficient in obtaining this information prior to trial, the additional evidence would have been merely cumulative, and the failure to present it did not prejudice petitioner in any meaningful way.

*d. Ground Six*

The state habeas court also found no merit in petitioner's contention that trial counsel was ineffective for failing to raise the issue of Pilkinton's "deal" with prosecutors, as Pilkinton was indicted for the same crimes and merely received a lighter sentence. The state habeas court found no evidence that such a deal existed, trial counsel testified that no such deal existed, and petitioner failed to present any evidence that such a deal existed outside of Pilkinton's lighter sentence.[1]

The undersigned finds that the state habeas court conducted a thorough analysis of all of petitioner's claims as well as the facts in the case. Given the state habeas court's proper application of the principals of Strickland to the facts of this case, this court will defer to the state court's ruling that plaintiff received effective assistance of counsel on these claims.

## 2. *Ineffective Assistance of Counsel on Appeal*

*a. Ground Four*

Petitioner claims that counsel was deficient in failing to raise the claim that the trial court erred in failing to sua sponte charge the jury on involuntary manslaughter. The state habeas court found that this ground was "not strong" and counsel's decision not to raise a weak claim on appeal was within the proper scope of tactical decisions made by a reasonable person. The state habeas court in its analysis relied upon Georgia case law; however, the cases cited by the state habeas court relied upon the language and principals enumerated in Strickland and its progeny.

---

[1] Pilkinton received a ten year probated sentence for aggravated assault and the murder charge was apparently nolle prossed.

Petitioner has not shown that the state habeas decision was based upon an unreasonable determination of the facts before the court, and the record clearly supports the habeas court's factual findings and legal conclusions of law.

### 3. *Prosecutorial Misconduct*

*a. Grounds Five and Seven*

In Ground Five petitioner contends that the prosecution failed to disclose a deal it made with Pilkinton and failed to correct his incorrect testimony at trial.   In Ground Seven petitioner contends that the prosecution failed to disclose evidence of Pilkinton's violent past and mental illness.  Respondent contends that these grounds are procedurally defaulted.

Ground five was raised in the state habeas case but was only addressed in the context of a separate claim of ineffective assistance of counsel.  The state habeas corpus court found that the separate claim of a violation of due process was procedurally defaulted under Georgia state law.  Ground Seven was raised for the first time in the currently pending petition herein.

A state habeas corpus petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default.  Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).  Such procedural default can arise in two ways.  First, where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred, Sykes requires the federal court to respect the state court's decision.  Atkins v. Singletary, 965 F.2d 952, 956 (11th Cir.1992), cert. denied, 515 U.S. 1165, 115 S.Ct. 2624, 132 L.Ed.2d 865 (1995);  Meagher v. Dugger, 861 F.2d 1242, 1245 (11th

Cir.1988).   Second, if the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court;  the exhaustion requirement and procedural default principles combine to mandate dismissal.  Snowden v. Singletary, 135 F.3d 732, 737  (11th Cir.1998), cert. denied, 525 U.S. 963, 119 S.Ct. 405, 142 L.Ed.2d 329 (1998);  see also §28 U.S.C.  2254(b)(1)(A)(1994)(pre-AEDPA) ("An application for writ of habeas corpus ... shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State....").  The Supreme Court held in Castille v. Peoples, 489 U.S. 346, 351 (1989), that a federal habeas court could hold claims were procedurally defaulted, and therefore exhausted, "if it is clear that [the] claims are now procedurally barred under [state] law."

   Under the prejudice prong of Wainwright v. Sykes, petitioner must show that the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness.  Murray v. Carrier, 477 U.S. 478 (1986). Petitioner has not shown the necessary cause and prejudice necessary to circumvent his procedural default.  McCoy v. Newsome, 953 F. 2d 1252, 1258 (11th Cir. 1992), cert. denied 504 U.S. 944 (1992).  (Petitioner has not shown cause; therefore, the court need make no inquiry into prejudice.)  Smith v. Murray, 477 U.S. 527 (1986); Harmon v. Barton, 894 F.2d 1268 (11th Cir. 1990), cert. denied 498 U.S. 832 (1990).

    Petitioner has not produced evidence showing that he is "actually innocent" of the crimes for which he was convicted. Accordingly, the facts of his case do not support a conclusion that there will be a fundamental miscarriage of justice if the court does not consider his federal claims. McCoy, 953 F.2d at 1262.

Respondent argues that, as petitioner's claims are unexhausted, an application of Georgia law would find that the claims are procedurally defaulted as well.  The Georgia Supreme Court has made it clear that, in order to preserve claims for review on the merits in subsequent collateral attacks on convictions, the issue complained of must be both timely raised at trial under the relevant procedural requirement and raised on appeal as error.  Black v. Hardin, 255 Ga. 239, 336 S.E.2d 754 (1985).  This rule provides that a petitioner may try to show cause and actual prejudice to avoid the procedural bar.  White v. Kelso, 261 Ga. 32, 33, 401 S.E.2d 733 (1991); this rule is consistent with the "cause" and "actual prejudice" standard of Wainwright v. Sykes, supra, and its progeny.  Valenzuela v. Newsome, 253 Ga. 793, 795, 325 S.E.2d 370 (1985), cert. denied 454 U.S. 963, 102 S.Ct. 503 (1981).

Consequently, the undersigned finds that Grounds Five and Seven are procedurally defaulted.

CONCLUSION

Accordingly, it is the recommendation of the undersigned that this petition for federal habeas relief be **DENIED**.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 6th day of September, 2005.

                                              //S Richard L. Hodge
                                              RICHARD L. HODGE
                                              UNITED STATES MAGISTRATE JUDGE

msd